# DETROIT FIRE & MARINE INS. CO. v. SCOTT. (No. 3506.)

## Court of Civil Appeals of Texas. Texarkana. Feb. 14, 1928.

### Rehearing Denied Feb. 27, 1928.

Insurance &#x24B8;&#x2501;235—Evidence held to sustain finding that fire policy had not been canceled.

In action on fire policy, evidence *held* to support finding that there was no unconditional agreement between insured and insurer's agent for the cancellation of the policy by the substitution of a policy of another insurance company, in view of retention by insured of original policy and failure of agent to deliver new policy.

Appeal from Lamar County Court; J. M. Braswell, Judge.

Action by W. D. Scott against the Detroit Fire & Marine Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

E. G. Senter, of Dallas, and Edgar Wright, of Paris, for appellant.

Park & Dohoney, of Paris, for appellee.

HODGES, J. On November 21, 1924, the appellant issued to the appellee a fire insurance policy for the sum of $500. On February 7, 1925, the building thus insured was destroyed by fire, and upon the refusal of the appellant to pay the amount of the insurance this suit was filed.

Appellant pleaded specially that the policy had been canceled by agreement between its agent and the insured. The making of any such agreement was denied by the appellee. He testified that some time before the fire the

agent of the appellant called him over the phone and stated that he, the agent, might want to change the insurance to another company. In reply to that appellee expressed his willingness to such a change, and instructed the agent, in the event it was made, to leave the policy at his place of business. There was a conflict in the evidence upon that issue. In response to an interrogatory submitting that issue, the jury found in favor of the plaintiff.

We think the testimony supports the finding of the jury. If the appellee's testimony be true, there was no unqualified announcement that the policy would be canceled, nor was there any unconditional agreement by him that the cancellation should be made. No offer was made to return the premium, and no other policy of insurance was in force at the time of the fire.

The judgment is affirmed.

### On Motion for Rehearing.

The contention is that under the evidence in this case it conclusively appears that there was an agreement entered into between Floyd, the agent, and Scott, the insured, to cancel the policy. In the trial below Floyd, appellant's agent, testified as follows:

"Just a few days prior to December 1, 1924, I received instructions from the company to take up and to cancel the policy of insurance issued to Mr. Scott, and also a policy on the stock of goods in said building which was issued to another party. I got Mr. Scott over the phone and told him that the company had wired me to take up and cancel the policy and ordered me to take it up; that I thought I could get the insurance for him on the building in another company, and asked him if it would be all right with him to do this. He said it would be all right. I told him to leave his old policy at the Paris Grocery Company's office, and I would call and get it and leave the new policy for him. I applied to Mr. J. I. Ball for insurance on the building for Mr. Scott, in a company for which Mr. Ball was the agent. Mr. Ball issued and delivered to me, for Mr. Scott, a policy on Mr. Scott's building for the same amount as the old policy, and I took the policy to the Paris Grocery Company's office to deliver to Mr. Scott and to get up the old policy he was to leave there for me. I inquired if he left the old policy, but he had not done so, and I did not leave the new policy. I made several trips to the grocery company to get the old policy and leave the new policy, but did not leave the new policy because Mr. Scott did not leave the old one. After the new policy had been issued and was in my possession for about eight or ten days, Mr. Ball, agent of said company, advised me that his company which had written the policy had instructed him to cancel it, and I surrendered same to Mr. Ball. I never did get the old policy from Mr. Scott."

As to the conversation that took place over the telephone Scott testified as follows:

"Some time after the policy of insurance was issued Mr. Floyd, the agent of the insurance company, called me over the phone and told me he might want to change the policy into another company, and I told him it would be all right to transfer that policy into another company, and I told him to deliver the policy to the Paris Grocery Company. I naturally supposed he would take up the old policy. * * * I never received any policy in another company. I thought my house was insured under the old policy, which I had never surrendered."

In so far as there is any conflict between the two witnesses, we must assume that the jury accepted as true the testimony of Scott. Counsel for appellant insist, however, that Scott's testimony shows an agreement to cancel the old policy and the employment of Floyd as an agent to secure other insurance. They further contend that the evidence shows without dispute that other insurance was secured by Floyd which was effective for a few days. We do not so construe the testimony relied on. According to Scott he did not agree to an unconditional cancellation of the policy he then held, but did agree that the insurance might be transferred to another company. If the policy issued by Ball and delivered to Floyd was in legal effect a delivery to Scott, that policy became effective and the old policy became void. If the old policy was annulled in that manner, it was not revived by the subsequent cancellation of the new policy. The question then is, Was the delivery of the new policy to Floyd by Ball a delivery to Scott? If so, that policy has not been legally canceled, if it contained the same terms as the one sued on, because Scott had not been given the required notice, and Floyd could not waive that notice. The trial court had a right to conclude that the delivery of the new policy to Floyd was not in legal effect a delivery to Scott. Floyd's testimony makes it clear that he intentionally withheld the new policy from Scott. He refused to leave it at the office of the Paris Grocery Company, as he had been directed, because Scott had not surrendered the old policy. Evidently in thus withholding the new policy he was acting in the interest of the company which had issued it, and for the purpose of preventing the policy from becoming effective. That he represented the insurance company, and not Scott, is further indicated by his delivery of the new policy to Ball upon a demand for its surrender, without notifying Scott or giving him an opportunity to procure other insurance. Had Floyd delivered the new policy according to Scott's instructions a different legal situation would have arisen. We think the evidence justified the conclusion that the terms upon which Scott had agreed for the cancellation of his policy had not been complied with.

The motion is overruled.